Edward J. Wynne      (SBN #165819)
J.E.B. Pickett        (SBN #154294)
WYNNE LAW FIRM
100 Drakes Landing Road, Suite 275
Greenbrae, CA 94904
Tel. 415-461-6400
Fax. 415-461-3900
www.wynnelawfirm.com

Attorneys for Plaintiff

# UNITED STATES DISTRICT COURT

## CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| BENJAMIN PAPARELLA, MARK KAM, ALEX KUZNETSOV, individually and on behalf of other members of the general public similarly situated,<br><br>              Plaintiff,<br><br>      vs.<br><br>JP MORGAN CHASE BANK, NATIONAL ASSOCIATION and DOES 1 though 50, inclusive,<br><br>              Defendant. | **CASE NO. SACV 11-01053 AG (MLGx)**<br><br>**CLASS ACTION**<br><br>**MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF PLAINTIFFS' MOTION TO REMAND FOR LACK OF SUBJECT MATTER JURISDICTION**<br><br>ACCOMPANYING DOCUMENTS: Notice of Motion; Declaration of Edward J. Wynne<br><br>**[28 U.S.C. § 1447]**<br><br>Date:  September 26, 2011<br>Time: 10:00 a.m.<br>District Judge: Hon. Andrew J. Guilford<br>Room: 10D |

MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF MOTION TO REMAND

I.     STATEMENT OF ISSUES ................................................................. 1
II.    PROCEDURAL BACKGROUND......................................................... 1
       A.     First Removal Attempt. ........................................................ 2
       B.     Second Removal Attempt. ..................................................... 3
       C.     Third and Current Removal Attempt...................................... 5
              1.     Defendant Withheld Evidence From This Court Which
                     Establishes That Plaintiffs' Class Definition Remains
                     "Business Bankers." ................................................ 6
              2.     Defendant Failed to Produce Evidence to This Court Which
                     Establishes When Each Class Representative Was A Business
                     Banker. ................................................................. 8
              3.     Nothing of Significance Has Changed Giving Rise to
                     Removal Jurisdiction. .............................................. 10
III.   LEGAL ANALYSIS............................................................................ 12
       A.     Defendant has the Burden to Establish Removal Jurisdiction Under
              Diversity Jurisdiction. ........................................................ 12
       B.     The Amount In Controversy for each Named Plaintiff Is Far Less
              Than $75,000 Under Either the Legal Certainty or Preponderance of
              Evidence Standards............................................................. 13
              1.     Kuznetsov's Individual Claims are less than $75,000................... 13
                     i.     Overtime. ................................................ 14
                     ii.    Meal Breaks. ............................................. 14
                     iii.   Rest Breaks. .............................................. 15
                     iv.    Waiting Time Penalties. ................................ 15
                     v.     Attorneys' Fees. ........................................ 15
              2.     Paparella's Individual Claims are less than $75,000.................... 17
                     i.     Overtime. ................................................ 18
                     ii.    Meal Breaks. ............................................. 18
                     iii.   Rest Breaks. .............................................. 19
                     iv.    Waiting Time Penalties. ................................ 19
                     v.     Attorneys' Fees. ........................................ 19
       C.     Defendant Again Fails To Prove That The Amount In Controversy
              Pursuant to the Class Action Fairness Act Exceeds The Statutory
              Limit................................................................................ 19
              1.     Defendant again provides no evidence on which to base any
                     calculations of alleged damages for the class............................. 20
              2.     Plaintiffs' discovery responses do not evidence "bad faith.".......... 22
              3.     Defendant cannot meet either the legal certainty or
                     preponderance standard by attempting to use its incorrect
                     damages calculations of Kuznetsov and Paparella or their
                     discovery responses. ................................................. 23
IV.    CONCLUSION.................................................................................. 25

MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF MOTION TO
REMAND

1

## **Table of Authorities**

2

**Federal Cases**

3

4   *Abrego Abrego v. Dow Chemical Co.*, 443 F.3d 676, 685 (9th Cir.2006) ....................19

5   *Badia v. Countrywide Fin. Corp*. Not Reported in F.Supp.2d, 2010 WL 4628001, *2

6       (C.D.Cal. 2010) .........................................................................................................25

7   *Benson v. 51 Handling 5Ys., Inc.*, 188 F.3d 780,783 (7th Cir. 1999).............................10

8   *Brady v. Mercedes-Benz USA, Inc.*, 243 F.Supp.2d 1004, 1010-11 (N.D.Cal.2002).....16

9   *Burk v. Med. Sav. Ins. Co.*, 348 F.Supp.2d 1063, 1068-69 (D.Ariz.2004) ....................16

10  *Conrad v. Hartford Accident & Indemnity Co.*, 994 F.Supp. 1196, 1200 (N.D. Cal.

11      1998).........................................................................................................................16

12  *Duncan v. Stuetzle*, 76 F.3d 1480, 1485 (9th Cir. 1996)...........................................13

13  *Erb v. Alliance Capital Management, L.P.* (7th Cir. 2005) 423 F.3d 647................10, 11

14  *Faulkner v. Astro-Med, Inc.*, 1999 WL 820198, at *4 (N.D.Cal. Oct.4, 1999)..............16

15  *Gaus v. Miles, Inc.*, 980 F.2d 564, 566 (9th Cir. 1992) ................................12, 13, 16, 20

16  *Gibson v. Chrysler Corp.* 261 F.3d 927, 941-42 (9th Cir. 2001) ...............................16

17  *Green v. Staples Contract & Commercial, Inc.*, Not Reported in F.Supp.2d, 2008 WL

18      5246051, *4 (C.D.Cal. Dec.10, 2008).......................................................................25

19  *Hollinghurst v. Lacoste USA* 2010 WL 2630365 (C.D.Cal.,2010) at *4-5 ...................12

20  *Kirkbridge v. Continental Casualty Co.*, 933 F.2d 729, 732 (9th Cir. 1991) ...............10

21  *Korn v. Polo Ralph Lauren Corp.*, 536 F.Supp.2d 1199 (E.D. Cal. 2008) ...................23

22  *Lara v. Trimac Transp. Servs., Inc.* 2010 WL 3119366, *1 (C.D. Cal. Aug 6, 2010) ...13

23

24

ii

*Lowdermilk v. U.S. Bank Nat'l Ass'n.* (9th Cir.2007) 479 F.3d 994 ........................passim

*Lyon v. W.W. Grainger, Inc.* 2010 WL 1753194, *1-2 (N.D. Cal. Apr. 29, 2010) ..13, 15

*Munoz v. Central Parking Sys., Inc.* Not Reported in F.Supp.2d, 2010 WL 3432239, *2 (C.D.Cal. 2010) ..................................................................................................25

*Nelson v. Bic USA, Inc.* 2008 WL 906049 (S.D. Cal. 2008) ..........................................23

*Roth v. Comerica Bank* --- F.Supp.2d ----, 2010 WL 6982510, *8 (C.D.Cal. 2010) .....15

*Sanchez v. Monumental Life Ins. Co.* 102 F.3d 398, 404 (9th Cir. 1996) .......................16

*Simmons v. PCR Tech.*, 209 F.Supp.2d 1029, 1034-35 (N.D.Cal.2002) ........................16

*Singer v. State Farm Mut. Auto. Ins. Co.* 116 F.3d 373, 377 (9th Cir. 1997).................16

*Site Mgmt. Solutions, Inc. v. TMO CA/NV, LLC,* 2011 WL 1743285, at *3 (C.D.Cal. May 4, 2011) ........................................................................................................13

*Surber v. Reliance National Indemnity Co.,* 110 F.Supp.2d 1227, 1232 (N.D. Cal. 1999) ...........................................................................................................................16

**Statutes**

28 USC § 1332(a) .............................................................................................................1

28 USC § 1332(d) .........................................................................................................1, 2

28 USC § 1446(b) ...........................................................................................................12

28 USCA § 1441 .............................................................................................................13

28 USCA § 1447(c) .........................................................................................................13

The Class Action Fairness Act of 2005 ..................................................................passim

MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF MOTION TO REMAND

I.      **STATEMENT OF ISSUES**

Whether this putative class action should again be remanded to state court, given the following facts, which demonstrate the impropriety of Defendant's removal, premised on both diversity jurisdiction, codified in relevant part at 28 U.S.C. § 1332(a) and The Class Action Fairness Act of 2005 ("CAFA"), codified in relevant part at 28 U.S.C. § 1332(d), given that:

(1)  The complaint specifically disclaims each Plaintiffs' damages above $75,000;

(2)   Defendant again improperly seeks to expand the class definition and includes persons who are not members of the class;

(3)   Defendant does not set forth facts sufficient to show, by either a legal certainty or a preponderance of the evidence, that the named Plaintiffs' amount in controversy meets the $75,000 jurisdictional minimum;

(4)  The complaint specifically alleges the amount in controversy including damages, restitution, attorney fees, penalties, and value of injunctive relief sought does not exceed $5,000,000;

(5)  Defendant does not set forth facts sufficient to show by a legal certainty that the amount in controversy exceeds $5,000,000.00 jurisdictional minimum; and

(6)  Defendant does not set forth evidence in support of its claim that Plaintiffs' allegations were not made in good faith.

II.     **PROCEDURAL BACKGROUND**

This is the **third time** Defendant has removed the action to this Court.

---

1

MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF MOTION TO REMAND

## A.     First Removal Attempt.

On May 5, 2010, Plaintiff filed a proposed Class Action Complaint in the Orange County Superior Court of California predicated on violations of California law regarding the classification of Defendant's Business Bankers as exempt as opposed to non-exempt.  The proposed class definition was (and is):

> All current and former California based employees of JPMorgan Chase Bank, National Association, with the title "Business Banker" who worked at any time from September 25, 2008 up to the time the class is certified.

(Def. Not. of Removal, Ex. A, Complaint, ¶ 14; Ex. B, FAC, ¶ 16.)

The complaint (and FAC) allege that "[t]he amount in controversy including damages, restitution, attorney fees, penalties, and value of injunctive relief sought does not exceed $5,000,000."  (Def. Not. of Removal, Ex. A, Complaint, ¶ 4; Ex. B ¶ 6.) On June 15, 2010, Defendant filed a Notice of Removal.  Defendant's removal was premised solely on The Class Action Fairness Act of 2005 ("CAFA"), codified in relevant part at 28 U.S.C. § 1332(d).

On August 30, 2010, Plaintiffs' Motion to Remand was granted and the matter was sent back to the Orange County Superior Court for further proceedings.  In granting Plaintiffs' Motion to Remand, this Court found that Defendant must satisfy the "legal certainty" standard enunciated in *Lowdermilk v. U.S. Bank Nat'l Ass'n.* (9th Cir.2007) 479 F.3d 994, 998 due to the fact that Plaintiff had specifically plead an amount in controversy less than the jurisdictional minimum for federal jurisdiction under CAFA. (Wynne Decl. Ex. 1, Order Granting Plaintiffs' Motion to Remand, August 30, 2010.)

MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF MOTION TO REMAND

1    This Court analyzed the evidence offered by Defendant in support of its opposition to

2    Plaintiffs' Motion to Remand and found that it did not meet the legal certainty standard:

> The only evidence presented by Defendant is the single page Declaration of Tiffany A. Harris ("Harris Decl."). In her Declaration, Ms. Harris provides approximate numbers for work hours and pay of "employees holding a business banker *or similar title*." (Harris Decl. ¶¶ 3-4 (emphasis added).) But the Complaint only addresses "business bankers." Defendants cannot meet the legal certainty test by expanding the class beyond the class definition contemplated in the Complaint. Further, the Declaration does not identify the weeks or hours actually worked by the employees. Instead, it states that "employees holding a business banker or similar title typically work 40 or more weeks per year," "typically work five or more days a week," and their work days are "typically longer than five hours." The Declaration contains no exhibits listing the number of employees or the hours worked during the class period. Nor does it break down the estimates based on "business bankers" or "similar titles." This evidence is not sufficient to meet the legal certainty standard. *See Lowdermilk*, 479 F.3d at 1001 ("absent more concrete evidence, it is nearly impossible to estimate with any certainty the actual amount in controversy").

14   (Wynne Decl., Ex. 1, Order Granting Plaintiffs' Motion to Remand, Emphasis added.)

15   **B.      Second Removal Attempt.**

16       On October 8, 2010, Defendant filed a Motion to Strike Class Allegations in

17   state court.  The only basis for the motion was the *factual* allegation that Plaintiff did

18   not hold the "Business Banker" title.  (Wynne Decl., Ex. 2, Notice of Motion, p. 1:11-

19   13; Memo., p. 1:22-24.)  Defendant made no other argument in support of its Motion to

20   Strike the Class Allegations.  The state court denied Defendant's Motion to Strike.

21       On December 20, 2010, Chase again removed the action to this Court.

22   Defendant's removal was premised on the false claim that Plaintiff Paparella did not

23   hold the title "Business Banker" and that the California Superior Court had denied

24

---

3

Defendant's Motion to Dismiss Class Allegations by allegedly finding that the class definition included both "Business Bankers" and persons of "similar title." This Court ordered Defendant to show cause why the case should not be remanded for lack of jurisdiction.   As noted by this Court's February 28, 2011 Order, the findings of this Court at that time were:

> Plaintiff contested Defendant's allegation that he had not been employed as a Business Banker. To support his argument, Plaintiff cited a number of documents: (1) A Performance Action Plan dated November 29,2009, listing his current position as "Business Banker;" (2) a Performance Action Plan dated November 17,2009, listing his current position as "Business Banker;" (3) a Performance Improvement Notice dated July31,2009, listing his current title as "Business Banker;" (4) his business card listing his current title as "Business Banker;" and (5) his Personal Incentive Calculator dated February 2, 2010, listing his title as "Business Banker."

> Based on the evidence presented by both parties, it appears likely that the Superior Court denied the Motion to Strike because the court concluded that the Complaint sufficiently alleges Plaintiff **is a Business Banker**. (Complaint ¶1.) And while it is not completely clear that this was the Superior Court's reasoning behind its ruling, Defendant's interpretation of the Superior Court's one-line denial is pure conjecture based on the evidence submitted by the parties. <u>Nothing on the record shows that the class has been expanded to include those who hold the title "Mgr-Small Bus. Relationship."</u>

(Wynne Decl., Ex. 3, pp. 4-5.)(Emphasis added.)

> Based upon such findings, this Court rightfully concluded as follows:

> …the Superior Court's denial of the Motion to Strike appears to support Plaintiff's contention that Plaintiff **is a Business Banker**. The Court declines to read the Superior Court's decision as redefining the putative class to include additional class members. Nor does the Court believe that Plaintiff ever acknowledged that he was not a Business Banker. Thus, nothing of substance has changed since this Court's previous remand of this case, and events do not reveal any new ground for removal jurisdiction. Defendant's motion must fail.

---

MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF MOTION TO REMAND

1    (Wynne Decl., Ex. 3, pg. 6.)(Emphasis added.)

2         Thus, on two separate occasions, this Court has rebuffed Defendant's effort to

3    manufacture a claim that the class definition in this action included any persons other

4    than "Business Bankers."

5         **C.    Third and Current Removal Attempt.**

6         On April 14, 2011, Plaintiff amended the Complaint to include two additional

7    class representatives.   On June 10, 2011, Plaintiffs served responses to Defendant's

8    state court discovery requests.    Defendant filed the current removal on July 13, 2011.

9    For the third time in this Court, Defendant seeks to improperly expand the class

10   definition past that of "Business Banker" so as to over-inflate the size of the class, over-

11   inflate the alleged potential damages of the named Plaintiffs and over-inflate the alleged

12   potential damages of the entirety of the class in an effort to obtain federal jurisdiction

13   where none exists.

14

15        Although omitted by Defendant, Plaintiffs hereby provide this Court the

16   evidence conclusively showing that Plaintiffs' class definition is and always has been

17   "Business Bankers." Plaintiffs also provide records produced by Defendant in this

18   action, establishing that none of the named Plaintiffs' claims for damages meet the

19   minimum threshold of $75,000.   Lastly, as with the second occurrence before this

20   Court, Defendant's removal is untimely as nothing of significance has changed between

21   the time this case was remanded on February 28, 2011 and Defendant's third removal

22   on July 13, 2011.   Lastly, like its prior attempts, Defendant has again failed to prove

23   damages excessive of the statutory limits under CAFA.

24

MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF MOTION TO
REMAND

1.    **Defendant Withheld Evidence From This Court Which Establishes That Plaintiffs' Class Definition Remains "Business Bankers**."

As it always has been for each of the three removals by Defendant, Plaintiffs' class definition in this action is "Business Bankers." (Def. Notice of Removal, Ex. A, ¶ 1, Ex. B, ¶¶ 1, 2, 3.)  Despite this Court so finding on two occasions, Defendant again unilaterally seeks to change the class definition.  Defendant's sole contention in support of its claim is a state court discovery response by Class Representative Paparella which Defendant claims expands the class definition. (Defendant's Notice of Removal, pg. 17:18-20)  Such claim is demonstrably false.  Defendant's request for admission No. 7, demanded:

> Admit that the PUTATIVE CLASS is defined in YOUR COMPLAINT to include only those EMPLOYEES holding the official title of "Business Banker" during the RELATIVE TIME PERIOD.

(Def. Notice of Removal, Ex. G, Gonnell Decl., Ex. 7, page 205.)

Plaintiffs' response to the request for admission was the following:

> Objection.  Plaintiff Objects that this request for admission is overly broad, unduly burdensome and oppressive.  Plaintiff objects to this request for admission on the grounds that it is vague, ambiguous, and unintelligible as to the term "official title."  Plaintiff objects to this request for admission to the extent that it calls for a legal conclusion or opinion.  Plaintiff objects to the request on the grounds that it calls for speculation.  Without waiving and subject to said objections, Plaintiff responds as follows: Deny.

(Def. Notice of Removal, Ex. G, Gonnell Decl. Ex. 8, page 216-217.)

At no time did Defendant attempt to clarify its request for admission through meet and confer efforts, nor seek to compel a supplemental response. (Wynne Decl. ¶ 12.)  Defendant fails to inform or provide to this Court the fact that, at Defendant's

1   demand, Plaintiff also provided a response to California Form Interrogatory No. 17.1,

2   as to request for admission No. 7, which requires a response for each denial of an

3   admission, including providing all facts on which said denial is made.   Plaintiffs'

4   response provided the facts on which the denial was based as follows:

> The class definition at paragraph 16 in the First Amended Complaint is as
> follows: "All current and former California based employees of JPMorgan
> Chase Bank, National Association, with the title "Business Banker" who
> worked at any time from September 25, 2008 up to the time the class is
> certified."

(Wynne Decl., Ex. 4.)

Thus, Plaintiffs explained the reason for the denial of the request for admission,

expressly explaining that the class definition remains those persons with the title

"Business Banker."   Furthermore, Defendant fails to inform the Court that Plaintiff

admitted that the class definition <u>does not include</u> employees holding the title "Mgr-

Small Bus. Relationship." (Def. Not. of Motion, Ex. G, Gonell Decl., Ex 8 thereto, pg.

217.)

Lastly, Defendant overlooks Paparella's responses to discovery wherein

Paparella asserts that he first held the Small Business Relationship Manager title and

then the Business Banker title, but that only the "Business Banker" title is at issue in

this action. (Def. Not. of Removal, Ex. G, Gonnel Decl., Ex. 5 thereto, Def. Special

Interrogatories Nos. 1, 2; Ex. G, Gonnel Decl, Ex. 6 thereto, Pl. Paparella's Response to

Special Interrogatories Nos. 1, 2.)

Thus, there has been no change in the definition of the class at any time.

Plaintiffs have admitted that the class does not include persons holding the title of

MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF MOTION TO
REMAND

Small Business Relationship Manager.   Further, as shown below, each named class representative Plaintiff was a Business Banker for Defendant.   Despite these facts, Defendant continues to attempt to expand the class definition to include persons not in the class in an attempt to over-inflate the amount in controversy to satisfy jurisdiction.

> **2.   Defendant Failed to Produce Evidence to This Court Which Establishes When Each Class Representative Was A Business Banker.**

Even more egregious than ignoring Plaintiffs' class definition is Defendant's failure to produce documents to this Court which evidences when each named class representative Plaintiff was a Business Banker.  As previously provided to this Court by Plaintiff in Opposition to Defendant's Response to the Court's OSC Re: Defendant's Second Notice of Removal (and as identified by this Court in its February 28, 2011 Order Remanding Case for Lack of Jurisdiction), documents **produced by Defendant** from Paparella's personnel file show that Paparella held the title "Business Banker" at Chase:

- Document JPMC-P0000045:   In the Performance Action Plan dated November 29, 2009, next to the category "Current Position," the title "Business Banker" is listed (underneath Mr. Paparella's name) (Wynne Decl., Ex  5.)

- Document JPMC-P0000047:   In the "Branch Business Banking Performance Action Plan dated November 17, 2009, Plaintiff's current position is listed as "Business Banker."  (Wynne Decl., Ex. 5.)

- Document JPMC-P0000049:  In the "Performance Improvement Notice" dated July 31, 2009, Plaintiff's title is listed as "Business Banking Officer." (Wynne Decl., Ex. 5.) Moreover, the content of the document discuss the "2009 Business Banker Objectives" relevant to Mr. Paparella and adds, "These activities will assist Ben in improving his overall performance in the *Business Banker* job." (Emph. added.) (*Id.*)

---

MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF MOTION TO REMAND

Additionally (also previously noted in this Court's February 28, 2011 Order) Paparella is in possession of other documents generated during his employment with Chase that show his title as "Business Banker" including:

- Plaintiff's Chase business card listing his title as "Business Banker." (Wynne Decl., Ex 6.)

- In Plaintiff's "Personal Incentive Calculator" dated February 2, 2010, next to "Employee Type," the title of "Business Banker" is listed. (Wynne Decl., Ex. 6.)

Thus, by the records produced by Defendant to date, the earliest date reflected in the records as to when Paparella was a "Business Banker" for Defendant was July 31, 2009. This is also consistent with Defendant's records produced for the instant motion, showing that Paparella was "reclassified" as of July 1, 2009. (See, Def. Not. of Removal, Ex. D, Harris Decl., Ex. 5 thereto, pg. "96" "Salary-related Job History.")

Similarly, records produced **by Defendant** for Plaintiffs Kam and Kuznetsov are equally clear, showing that both of these class representatives were "reclassified" as "Business Bankers" on July 1, 2010. (Wynne Decl., Exs. 7, 8.)

Not only did Defendant fail to provide this evidence to the Court, Defendant has deliberately ignored the dates on which both Paparella and Kuznetsov first held the Business Baker job code in an attempt to over-inflate potential damages in this action. As noted below, in attempting to calculate alleged damages for Paparella and Kuznetsov, Defendant has attempted to include a significant period of time during which neither Plaintiff held the job code of Business Banker.

---

9

### 3. Nothing of Significance Has Changed Giving Rise to Removal Jurisdiction.

Just as was the case with Chase's second Removal, nothing of significance has changed between the time this case was remanded for the second time on February 28, 2011 and Defendant's third removal on July 13, 2011. Because nothing of significance has changed, Defendant's second removal is untimely. As previously noted by this Court's February 28, 2011 Order Remanding the action:

> …the Ninth Circuit interprets Section 1447 (d) as requiring a defendant to show that "subsequent pleadings or events reveal a new and different ground for removal." *Kirkbridge v. Continental Casualty Co.,* 933 F.2d 729, 732 (9th Cir. 1991). The Seventh Circuit takes an even stronger approach, stating that "[m]ultiple removals could encounter problems - could even lead to sanctions - if nothing of significance changes between the first and second tries." *Benson v.* 51 *Handling 5Ys., Inc.,* 188 F.3d 780,783 (7th Cir. 1999) (citations omitted).

(Exhibit 3, pg. 3.)

Plaintiffs' prior Opposition to Defendant's Response to this Court's OSC pointed out the holding of *Erb v. Alliance Capital Management, L.P.* (7th Cir. 2005) 423 F.3d 647, a case remarkable similar to the one at bar, wherein, at the federal court, Plaintiffs' motion to remand was granted. In state court, plaintiff then amended the complaint to add a new plaintiff and amended the complaint to clarify the existing causes of action. Defendant removed the case based on the amendments and plaintiff brought another motion to remand which was granted. Defendant appealed. The Court of Appeal determined that the time for the defendant's appeal was based on the district court's first order unless "circumstances have changed significantly":

> Unless the circumstances have changed significantly since the entry of the original order, we will deem the notice an appeal from that order, even though it may designate a later order as the order being appealed. (Citation.) In such a case, the notice of appeal will be timely only if filed within 30 days of the entry of the original order. (Citations.) Alliance filed its notice of appeal more than 30 days after the entry of the district court's first remand order. Thus, the timeliness of Alliance's appeal turns on whether the circumstances have changed sufficiently since the entry of the first order.

(*Erb v. Alliance Capital Management, L.P., supra*, 423 F.3d at 650-651.)

In *Erb,* the Court of Appeal determined that amending a complaint to add a new plaintiff or refining the language of the breach of contract claim were not significant enough to enlarge the time for filing an appeal because the same arguments defendant presented were the same ones it could have presented before. (*Id. at 652.*) The Court of Appeal dismissed the appeal for want of appellate jurisdiction. (*Id.* at 653.)

Here, Plaintiff has amended the complaint to add two new representative Plaintiffs. The purpose of the amended complaint was to provide additional persons whom Defendant had titled "Business Bankers." (Wynne Decl., Ex. 9, Motion to Amend, pp. 1-2.) As noted in *Erb,* such amendment was not significant enough to enlarge the time for filing an appeal because the same arguments defendant presented were the same ones it could have presented before. (*Id.* at 652.) Further, providing discovery responses which are entirely consistent with Plaintiffs' "Business Banker" class definition and the prior claims of the Complaint are not "changes" nor are they of any significance. *Hollinghurst v. Lacoste USA* 2010 WL 2630365 (C.D.Cal.,2010) at *4-5. In *Hollinghurst,* defendant claimed that receipt of discovery responses from plaintiff re-triggered the 30 day statute as it was only at that time that defendant could

---

11
MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF MOTION TO REMAND

ascertain the amount of off-the-clock work and missed meal and rest breaks being claimed. In denying this assertion, the court stated:

> [D]efendant's argument that it was only able to ascertain removability for the first time upon receipt of plaintiff's discovery responses fails, because the new information did not reveal any additional facts that defendant needed to ensure that the amount in controversy would exceed CAFA's $5 million threshold. Moreover, because the case still involves the same claims brought on behalf of the same putative class on the same set of facts as when the case was originally filed, plaintiff's discovery responses did not change the nature of the case such that a resetting of the removal clock would be warranted.

*Id.* at *5.

Similarly here, Plaintiffs' discovery responses did not change any of the claims or facts alleged in the Complaint (or First Amended Complaint). Defendant could have removed as to Plaintiff Paprarella on the grounds of individual diversity jurisdiction as of the time of the filing of the original Complaint and as to Kuztensov as of the filing of the Amended Complaint. Defendant failed to timely file its removal as to both Plaintiffs. As there have be no changes to this case, and certainly no significant changes that would restart the clock on Defendant's right to remove the action per 28 USC § 1446(b), Defendant has no basis to remove the action again and its third removal is both without basis and untimely.

## III. LEGAL ANALYSIS.

### A. Defendant has the Burden to Establish Removal Jurisdiction Under Diversity Jurisdiction.

There is a strong presumption **against** the exercise of removal jurisdiction. *Gaus v. Miles, Inc.*, 980 F.2d 564, 566 (9th Cir. 1992) (emphasis added). The removal statute

1  is strictly construed, and the court must reject federal jurisdiction if there is **any doubt**

2  as to whether removal was proper.   *Duncan v. Stuetzle*, 76 F.3d 1480, 1485 (9th Cir.

3  1996) (emphasis added); 28 U.S.C.A. §§ 1441 *et seq.*, 1447(c).   Any doubts as to

4  removability are resolved in favor of remanding the case to state court.   *Gaus, supra*,

5  980 F.2d at 566.   If at any time before final judgment it appears that the district court

6  lacks subject matter jurisdiction over a case that has been removed to federal court, the

7  case must be remanded.   28 U.S.C. § 1447(c).

8    **B.    The Amount In Controversy for each Named Plaintiff Is Far Less**
9         **Than $75,000 Under Either the Legal Certainty or Preponderance of**
        **Evidence Standards.**
10

11        Defendant concedes that Plaintiffs' Amended Complaint seeks less than the

12  $75,000 jurisdictional minimum for each named Plaintiff.   (Def. Not. Of Removal, pg.

13  9.)   Defendant also admits that, where the complaint is brought as a class action and

14  disclaims damages in an amount over both $75,000 for each plaintiff and $5 million as

15  to the class, district courts are split as to whether to apply legal certainty standard (*Site*

16  *Mgmt. Solutions, Inc. v. TMO CA/NV, LLC,* 2011 WL 1743285, at *3 (C.D.Cal. May 4,

17  2011); *Lara v. Trimac Transp. Servs., Inc.* 2010 WL 3119366, *1 (C.D. Cal. Aug 6,

18  2010)) or the preponderance of evidence test (*Lyon v. W.W. Grainger, Inc.* 2010 WL

19  1753194, *1-2 (N.D. Cal. Apr. 29, 2010)).   Regardless of which test is applied here,

20  however, Defendant's assertion that either or both Paparella and/or Kuznetsov's

21  individual amount in controversy exceeds $75,000 is demonstrably false.

22        **1.    Kuznetsov's Individual Claims are less than $75,000.**

23

24

Defendant has ignored the date on which Kuznetsov was reclassified by Defendant as a "Business Banker." Specifically, Defendant improperly asserts that Kuznetsov "was employed from September 25, 2008 [] through October 14, 2010, when he was terminated." (Def. Not. of Removal, pg. 9:23-25.)  Notably, Defendant does not differentiate the dates on which Kuznetsov held positions other than the one position at issue here.  Using those dates, Defendant asserts that Kuznetsov worked 465 days, after vacation and bank holidays and that, therefore, his amount in controversy exceeds $75,000.

In reality, as demonstrated by Defendant's own documents, Kuznetsov was only employed as a Business Banker <u>between July 1, 2010 and October 14, 2010</u>.  (Wynne Ex. 8.)  Using the appropriate dates, Defendant's own records submitted with the Notice of Removal show that Kuznetsov worked a total of 65 work days between those dates after subtracting 10 recorded vacation days, 3 recorded sick days and 3 holidays. (Def. Not of Removal, Ex. D, Harris Decl., Ex. 2, thereto, Wynne Decl., ¶ 13.)  When applying the actual days worked by Kuznetsov, the total amount in controversy is $20,610.83, far under the statutory minimum.

> **i.**      **<u>Overtime</u>.**

Using Defendant's figure of 1.5 hours of overtime per day and the overtime rate of $54.81 per hour of the 65 days worked as a Business Banker, results in $5,343.97:

65 work days x 1.5 hours OT x $54.81 = $5,343.97.

> **ii.**      **<u>Meal Breaks</u>.**

---

14

MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF MOTION TO REMAND

Using Defendant's figure of 4 days per week of missed meal breaks and the regular rate of $36.54 per hour for the 65 days worked as a Business Banker, results in $1,900.08:

65    4/5 missed meals/week x $36.54 = $ 1,900.08.

### iii.    Rest Breaks.

Defendant mistakenly inflates the potential amount in controversy by "double-counting" meal and rest breaks for each day.   An employee is only entitled to one additional hour's wages per day, even if denied both a rest and meal period during that day. *Roth v. Comerica Bank* --- F.Supp.2d ----, 2010 WL 6982510, *8 (C.D.Cal. 2010); *Lyon v. W.W. Grainger, Inc.,* 2010 WL 1753194, *4 (N.D.Cal. 2010).   Thus, even assuming Kuznetsov missed every rest period for every day, as Defendant has already sought the hourly wage incurred for 4 out of 5 days for missed meal periods, at best the potential amount in controversy for Kuznetsov is one additional hour of pay for the 5th day on which he potentially had a meal break, but missed his rest break(s), resulting in an amount in controversy for missed meal periods of $475.02:

65    1/5 missed rest periods x $36.54 = $475.02.

### iv.    Waiting Time Penalties.

$36.54/hour x 8 hours/ day x 30 days = $8,769.60

### v.    Attorneys' Fees.

"[D]istrict courts in this circuit have disagreed [as to] whether attorneys' fees incurred after the date of removal are properly included in the amount in controversy: some courts refuse to consider attorneys' fees incurred after removal whereas others

include a "reasonable estimate of attorneys['] fees likely to be expended." *Burk v. Med. Sav. Ins. Co.*, 348 F.Supp.2d 1063, 1068-69 (D.Ariz.2004) (comparing *Faulkner v. Astro-Med, Inc.*, 1999 WL 820198, at *4 (N.D.Cal. Oct.4, 1999) and *Conrad v. Hartford Accident & Indemnity Co.*, 994 F.Supp. 1196, 1200 (N.D. Cal. 1998) with *Brady v. Mercedes-Benz USA, Inc.*, 243 F.Supp.2d 1004, 1010-11 (N.D.Cal.2002) and *Simmons v. PCR Tech.*, 209 F.Supp.2d 1029, 1034-35 (N.D.Cal.2002)). Moreover, given that this is Defendant's third removal, it begs the question of whether the Court should look at fees at the time of the first, second or third removal. Regardless, any attorneys' fees would be <u>de minimus</u> at this time. Moreover, Defendant has provided no evidence of the hours or tasks performed by Plaintiffs' counsel and provided no evidence of the expected attorneys' fees as to Plaintiffs' individual claim. Hence, Defendant has not met its burden. Even if the Court were to consider these initial attorneys' fees on a case-wide basis, Plaintiffs' pro rata share at this time would be even smaller given that the attorney's fees must be attributed to all members of the class in a class action for purposes of determining the amount in controversy. *Gibson v. Chrysler Corp.* 261 F.3d 927, 941-42 (9th Cir. 2001).

More importantly, estimates of attorneys' fees must not leave substantial doubt and must be more than speculative to meet Defendant's burden of proving the amount in controversy. *Sanchez v. Monumental Life Ins. Co.* 102 F.3d 398, 404 (9th Cir. 1996); *Singer v. State Farm Mut. Auto. Ins. Co.* 116 F.3d 373, 377 (9th Cir. 1997); *Gaus* at 567; *Surber v. Reliance National Indemnity Co.,* 110 F.Supp.2d 1227, 1232 (N.D. Cal. 1999). Here, Defendant provides no evidence whatsoever, instead compounding

MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF MOTION TO REMAND

speculation upon speculation as to a potential recovery for attorneys' fees. Defendant's sole "estimate" is that there "may" be a recovery of 25% of the total amount as attorneys' fees. Plaintiffs dispute that Defendant has put any attorneys' fees in to controversy as Defendant's estimate is pure speculation. Even if the Court was to adopt Defendant's proposed 25% "benchmark," however, that provides for only $4,122 in attorneys' fees ($16,488.67 * 0.25 ). Thus, Kuznetsov's entire potential amount in controversy, even including the speculative attorneys' fees, would be **$20,610.83**.

### 2. Paparella's Individual Claims are less than $75,000.

Defendant wants it both ways. As noted by this Court's February 28, 2011 Order Re: OSC, Defendant brought a Motion to Strike in state court "based on the allegation that Plaintiff was not a Business Banker and could therefore not serve as the class representative." (Wynne Decl., Ex. 3, pg. 4.) Now, Defendant asserts that Paparella was a business banker at all times from September 2008 to February 2010. (Def. Not. of Removal, pg. 12:14-16.) Defendant should be precluded from making this argument under the doctrine of collateral estoppel. Even if not estopped from this argument, Defendant's own documents and Paparella's discovery responses belie this claim. As previously noted, Paparella's discovery responses asserts that he held the Small Business Relationship Manager title and then the Business Banker title, but that only the "Business Banker" title is at issue in this action. (Def. Not. of Removal, Ex. G, Gonnel Decl., Ex. 5 thereto, Def. Special Interrogatories Nos. 1, 2; Ex. G, Gonnel Decl, Ex. 6 thereto, Pl. Paparella's Response to Special Interrogatories Nos. 1, 2.) Defendant's own documents establish that Paparella was a Business Banker and that he

MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF MOTION TO REMAND

was likely reclassified to that position as of July 1, 2009. (Wynne Decl. Ex's. 5, 6, Def. Not. of Removal, Ex. D, Harris Decl., Ex. 5 thereto, pg. "96" "Salary-related Job History" noting July 1, 2009 "Reclassification.")   Thus, while Defendant should be collaterally estopped from now claiming that Paparella was a Business Banker at all times from September 2008 to February 2010, the records show that, at most, Paparella was a Business Banker from July 1, 2009 to February 4, 2010.   Using Defendant's pay records (Def. Not. of Removal, Harris Decl., Ex. 4) show that between July 1, 2009 and February 4, 2010, Paparella would have worked a total of 140 work days after subtracting 8 holidays, 6 recorded vacation days and 3 recorded sick days. (Wynne Decl. ¶ 12.)   When applying the actual days worked by Paparella, the total damages would be at best, $32,672, far under the statutory minimum.

### i.   **Overtime.**

Using Defendant's figure of 1.5 hours of overtime per day and the overtime rate of $56.41 per hour of the 140 days worked as a Business Banker, results in $11,846.10:

140 work days x 1.5 hours OT x $56.41 = $11,846.10.

### ii.   **Meal Breaks.**

Paparella customarily and regularly did not receive a full 30-minute uninterrupted meal period where he was relieved of all duties.   On that basis, Defendant assumes that Paparella <u>never</u> received a meal break. While this interpretation is debatable, even using Defendant's figure of 5 days per week of missed meal breaks and the regular rate of $37.61 per hour for the 140 days worked as a Business Banker, results in $5,265.40:

140 x 1 missed meals/day x $37.61 = $ 5,265.40.

### iii.     **Rest Breaks.**

Defendant again mistakenly "double-counts" meal and rest breaks for each day.  A Defendant has already taken the maximum penalty for Paparella for 5 missed meal periods per week, there is no additional amount in controversy to be added for rest periods for Paparella.

### iv.     **Waiting Time Penalties.**

$37.61/hour x 8 hours x 30 days = $9,026.40

### v.     **Attorneys' Fees.**

Plaintiffs again dispute that Defendant has put any attorneys' fees in to controversy as Defendant's estimate is pure speculation.  Even if the Court was to adopt Defendant's proposed 25% "benchmark," however, that provides for only $6,534 in attorneys' fees ($26,137.90 * 0.25 ).   Thus, Paparella's entire potential amount in controversy, even including the speculative attorneys' fees, would be **$32,672**.

As neither Kuznetsov or Paparella's amounts in controversy are even close to the statutory minimum, Plaintiffs respectfully request that the Court issue an order remanding this action back to the state court.

**C.     Defendant Again Fails To Prove That The Amount In Controversy Pursuant to the Class Action Fairness Act Exceeds The Statutory Limit.**

"[U]nder CAFA the burden of establishing removal jurisdiction remains, as before, on the proponent of federal jurisdiction." *Abrego Abrego v. Dow Chemical Co.,* 443 F.3d 676, 685 (9th Cir.2006). The removal statute is strictly construed against

MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF MOTION TO REMAND

1   removal jurisdiction, and "[f]ederal jurisdiction must be rejected if there is any doubt as

2   to the right of removal in the first instance." *Gaus, supra,* at 566 (9th Cir.1992).

3       The Ninth Circuit has identified different burdens of proof for establishing

4   removal jurisdiction in the CAFA context, depending on what has been pled in the

5   Complaint.  This Court has previously ruled that the "legal certainty" standard applies

6   to Plaintiffs' Complaint as it specified an amount in damages of less than $5,000,000

7   for the class.  (Wynne Decl. Ex. 1, pg. 3.)  There has been no change in the pleadings so

8   as to change this standard of review and the First Amended Complaint contains

9   identical language as to the amount of damages.  (Def. Not. of Removal, Ex's. A, B.)

10   As such, Defendant <u>must prove</u> that Plaintiff is <u>legally certain</u> to recover <u>at least</u>

11   $5,000,000.  Defendant falls far short of the required standard of review as it has made

12   multiple improper assumptions and further compounded this error by aggregating such

13   assumptions.

14

15       **1.**    **Defendant again provides no evidence on which to base any calculations of alleged damages for the class.**

16

17       Defendant claims to have provided a spreadsheet of persons who were "Business

18   Bankers". (Def. Not. of Removal, Ex. D, Harris Decl., ¶ 2, Ex. 1 thereto.) That exhibit,

19   however, lists persons with the titles of "BB," "SBRM" and "BOTH." (*Id*.)  Defendant

20   makes no effort to differentiate when alleged putative class members held the job code

21   of "Business Banker" and again attempts to include persons outside the class definition

22   with the Small Business Relationship Manager job code.

23

24

MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF MOTION TO REMAND

As Defendant has not broken out the work dates as to when persons held the "Business Banker" Job code, it is impossible to determine 1) the number of actual class members who held the job code "Business Banker"; 2) their actual rate of pay while a Business Banker; 3) their actual dates of employment as a Business Banker; 4) the number of work-weeks actually worked, i.e., where no vacation, sick time or other absences were taken while a Business Banker.   Defendant's Removal is similarly devoid of any information as to the hours worked by class members.   It must be noted that this Court previously held that Ms. Harris' prior declaration failed to provide sufficient evidence on which to make <u>any</u> calculations:

> ...the Declaration does not identify the weeks or hours actually worked by the employees. Instead, it states that "employees holding a business banker or similar title typically work 40 or more weeks per year," "typically work five or more days a week," and their work days are "typically longer than five hours." The Declaration contains no exhibits listing the number of employees or the hours worked during the class period. Nor does it break down the estimates based on "business bankers" or "similar titles." This evidence is not sufficient to meet the legal certainty standard. *See Lowdermilk*, 479 F.3d at 1001 ("absent more concrete evidence, it is nearly impossible to estimate with any certainty the actual amount in controversy").

(Wynne Decl. Ex. 1)

Here, the Harris Declaration is even more ambiguous as it simply states that "<u>employees</u>" "typically work 40 or more weeks per year," (Def. Not. of Remand Ex. D, Harris Decl. ¶ 3) "typically work five or more days a week," (*Id.* at ¶ 4) and their work days are "typically longer than five hours." (*Id.*)   With this scant and woefully incomplete information, it is impossible to determine how many hours per day/week any putative class member worked; to determine the total damages for overtime based

MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF MOTION TO REMAND

thereon; to identify how many meals or rest breaks were missed; or to identify how many class members were not paid waiting time penalties.

### 2.    Plaintiffs' discovery responses do not evidence "bad faith."

In an attempt to avoid the failure to provide any damages as to the class, Defendant now argues that Plaintiffs' discovery responses are in bad faith and put more than $5 million at issue.  Such claim is false.  Defendant points to Paparella's response to Defendant's state court request for admission No. 19, which requested Plaintiff to admit or deny that it was "possible" that class-wide damages "may" exceed $5 million. (Def. Not. of Removal, Ex. G, Gonnell, Ex. 7, thereto, pg. 206.)  What Defendant fails to inform the Court is that Paparella's qualified denial of the request stated, after several objections, that Plaintiffs' lacked sufficient information to enable Plaintiff to admit or deny the request, the reasons for which are made clear herein.  Defendant has not provided Plaintiffs information by which to determine the actual class members, the dates of employment, the work weeks worked, the rate of pay, etc.  Without this information, neither Plaintiffs nor this Court can make any such determination.  Thus, the response was made in good faith.

Next, Defendant claims that Paparella's discovery response stating the he has not calculated the total amount of wages owed is allegedly evidence of bad faith.  As stated in *Lowdermilk, supra,* "there are cases-as the instant case proves-in which the plaintiffs cannot anticipate from the outset the value of their case. They are not obligated to overstate their damages to satisfy the defendant's interest in a federal forum, but may plead conservatively to secure a state forum." *Id* at 1003.  Moreover, as demonstrated

MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF MOTION TO REMAND

above, Plaintiff did not need to calculate his total damages as they are clearly far lower than the jurisdictional minimum.   Lastly, given that Defendant has first claimed that Paparella was <u>never</u> a Business Banker and now claims that he was <u>always</u> a Business Banker, and as Defendant will not state the actual date on which Paparella became a Business Banker, Plaintiff cannot calculate his potential damages.

> **3.     Defendant cannot meet either the legal certainty or preponderance standard by attempting to use its incorrect damages calculations of Kuznetsov and Paparella or their discovery responses.**

As demonstrated, Defendant's calculations of damages for both Plaintiffs Kuznetsov and Paparella are wildly incorrect.   Further, Defendant cannot meet its evidentiary burden by attempting to use either such calculations or Plaintiffs' discovery responses as to hours worked or missed meal breaks as an extrapolation to the class. Defendant's reliance on *Korn v. Polo Ralph Lauren Corp.*, 536 F.Supp.2d 1199 (E.D. Cal. 2008) and *Nelson v. Bic USA, Inc.* 2008 WL 906049 (S.D. Cal. 2008) to claim that class-wide damages can be extrapolated from Plaintiffs' alleged amount in controversy is misplaced.   In *Korn,* plaintiffs alleged entitlement to a flat $1,000 statutory penalty for each and every member of the class. The court, noting that defendant had proved the existence of at least 5,001 class members, held the allegation sufficient to establish that at least $5 million was in controversy.   Similarly, in *Nelson,* plaintiff alleged that each and every class member was entitled to at $10 in damages.   Finding that defendant established the existence of at least 500,001 class members to a legal certainty, that court held the allegation sufficient to establish that at least $5 million was in

controversy.  In this action, there are no allegations as to any fixed amount recovery available as to <u>any</u> class member.  Further, Defendant has not proven to a legal certainty, or even a preponderance of evidence, the actual number of putative class members.  Thus, no extrapolation can be made.

Defendant's calculations as to overtime pay are unsupported by any evidence, based upon incorrect assumptions as to the class members and dates of work and presumptively assume that each class member worked the same amount of overtime based upon the discovery responses of the named Plaintiffs.  In fact, Defendant proffers a claim throughout its calculations that the class members allegedly worked a total of 21,160 work weeks but fails to provide <u>any evidence to support this claim</u>.  Given that Defendant has not proven the number of class members, the dates worked, the hours worked or their rates of pay, and the fact that Defendant has included persons who are not members of the class as defined by Plaintiff, Defendant's calculations of any class-wide potential damages for overtime are speculation, at best.  A court cannot base jurisdiction on defendant's speculation and conjecture. *Lowdermilk* at 1002.

Defendant compounds its errors in calculating missed meal breaks and waiting time penalties as it again includes persons who are not members of the class, thus overstating the weeks worked.  In addition to that error, Defendant then assumes that every class member missed all meal and rest breaks and that each person who terminated their employment is automatically entitled to the full statutory penalty. (Def. Not. of Removal, pp. 21-23.)  In calculating meal break violations and waiting time penalties, Defendant may not assume that all class members are entitled to all potential

MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF MOTION TO REMAND

damages. *Lowdermilk* at 1001; *Badia v. Countrywide Fin. Corp*. Not Reported in F.Supp.2d, 2010 WL 4628001, *2 (C.D.Cal. 2010); *Munoz v. Central Parking Sys., Inc.* Not Reported in F.Supp.2d, 2010 WL 3432239, *2 (C.D.Cal. 2010); *Green v. Staples Contract & Commercial, Inc.,* Not Reported in F.Supp.2d, 2008 WL 5246051, *4 (C.D.Cal. Dec.10, 2008).

Clearly, all of Defendant's "approximations" have been made without any evidence sufficient to meet the legal certainty standard. *Lowdermilk*, 479 F.3d at 1001. ("absent more concrete evidence, it is nearly impossible to estimate with any certainty the actual amount in controversy.") Thus, Defendant fails to satisfy its burden of proof establishing to a "legal certainty" that the amount in controversy exceeds $5,000,000. Plaintiff therefore respectfully submits that this Court has no subject matter jurisdiction over this matter and this case should be remanded back to state court.

## IV.    CONCLUSION.

Defendant's Removal fails to show that any named Plaintiff exceeds the minimum amount in controversy for individual diversity jurisdiction and fails to provide evidence or proof that Plaintiffs are legally certain to recovery more than the required $5,000,000 CAFA minimum in this action. Plaintiffs respectfully request that this matter be remanded back to the Superior Court of California, County of Orange, and that the Court award attorney's fees and costs.

WYNNE LAW FIRM

Dated: August 9, 2011                    _____/S/_____
                                         Edward J. Wynne
                                         Attorney for the Plaintiff